## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JEFFREY THOMAS,

     *Plaintiff,*

     v.

LIV GROUP, INC., SHAWN VALK

     *Defendants.*

Civ. No. 24-cv-40088-MRG

## MEMORANDUM AND ORDER ON
## DEFENDANTS' PARTIAL MOTION TO DISMISS [ECF No. 18]

**GUZMAN, D.J.**

### I.    Introduction

This is an employment discrimination case.  Plaintiff-former employee Jeffrey Thomas worked as a project manager and superintendent for Defendant-former Employer Liv Group Inc., a company that specializes in building and operating storage facilities.  Plaintiff alleges that after the onset of a serious health condition, Defendant Liv Group and Defendant-former manager Shawn Valk began to discriminate and retaliate against him before ultimately unlawfully terminating him.

Defendants filed a joint, partial motion to dismiss.  [ECF No. 18].  Following an in-person hearing, [ECF No. 26], and for the reasons stated below, the Court **DENIED IN PART** and **GRANTED IN PART** Defendants' motion by electronic order. [ECF No. 28].  In sum, the partial motion to dismiss is DENIED as to all claims <u>except</u> Count III (which alleged age-discrimination

against both Defendants). This Memorandum provides the Court's legal analysis and reasoning for its rulings on the motion to dismiss.

## II.    BACKGROUND

### a. The Facts[1]

#### i. Plaintiff and His Roles at Defendant Liv Group

In October 2018, Plaintiff[2] began working at Defendant Liv Group as a project manager and superintendent at one of the firm's Worcester, Massachusetts properties. [Am. Compl. at 2, ECF No. 17]. Defendant Liv Group specializes in building and operating storage facilities. [Id. at 3]. The firm employed twenty or more employees during twenty or more calendar weeks during the relevant period. [Id. at 2]. Plaintiff's compensation included a monthly, flat rate of $12,000. [Id. at 3]. In addition, Plaintiff was verbally[3] promised a bonus of five percent of a $7,000,000 budget associated with a certain project if Plaintiff led this project to completion under budget. [Id.] Plaintiff was given many responsibilities, and he only received positive employer feedback. [Id.] Throughout his employment, Plaintiff reported to Defendant Valk, who co-owns Defendant Liv Group with his father, non-party Mr. Ronald Valk. [Id. at 4]. Plaintiff alleges that he is more than ten years younger than Defendant Valk and that Defendant Valk does not have any disabilities. [Id.]

---

[1] Because this case is at the motion to dismiss stage, the Court sets forth the following facts taking as true all well-pleaded allegations in the Amended Complaint [ECF 17] and drawing all reasonable inferences in Plaintiff's favor. See Morales-Tanon v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

[2] Although the Complaint does not specify Plaintiff's age, it does allege that he was over forty-years old at all relevant times. [Am. Compl. at 21].

[3] Plaintiff contends that this constituted an oral contract. [Id. at 25].

2

### ii. **Plaintiff Begins Experiencing Medical Challenges; Defendant Valk Approves Requests for Leave and Certain Accommodations**

In September 2020, Plaintiff started to experience physical symptoms that at first appeared to be extreme indigestion.  [Id.]  However, Plaintiff's symptoms were eventually diagnosed as indicative of cardiac disease and as related to episodes of myocardial infarctions (i.e., heart attacks).  [Id.]  Plaintiff's cardiac disease and myocardial infarctions affect his ability to, among other things, climb, run, and exercise.  [Id.]  They also affect his cardiovascular system, more generally.  [Id.]  One day in January 2021, Plaintiff began vomiting while driving to work.  [Id.] Once Plaintiff arrived, he asked Defendant Valk if he could leave work early; a request that Valk approved.  [Id. at 4-5.]  Plaintiff's wife later rushed him to the hospital, where he was diagnosed as suffering a major heart attack that was caused by a blockage of the left anterior artery; a condition that carries a high rate of death.  [Id. at 5.]  Plaintiff was sent from a hospital in Lawrence, Massachusetts to the Beth Israel Deaconess Medical Center in Boston due to the severity of his heart attack and related condition.  [Id.]

Plaintiff then underwent emergency cardiac surgery.  [Id. at 6.]  Plaintiff contacted Defendant Valk as soon as he was able and apprised him about his condition.  [Id.]  Plaintiff requested two weeks of leave to undergo (presumably) additional surgery and to recuperate.  [Id.] Defendant Valk approved this request.  [Id.]  Plaintiff returned to work towards the end of February 2021.  [Id.]  However, Plaintiff asked if he could work remotely for the first two weeks following his return, and Defendant Valk approved this request.  [Id.]  When Plaintiff returned to in-person work in March 2021, he requested that he not be required to lift more than twenty pounds, which he alleges was not of his job responsibilities.  [Id.]

### iii.  <u>The Alleged Mistreatment Begins</u>

Plaintiff contends that when he returned to work, Defendant Valk began mistreating and disrespecting him for the remainder of his employment.  [<u>Id.</u> at 7]. For example, Defendant Valk allegedly called Plaintiff "the patient" during their conversations and asked him what his "ailment of the day" was.  [<u>Id.</u>].  Despite Plaintiff's explanation of his condition and request that Defendant Valk cease speaking to him like this, Defendant Valk allegedly continued to make similar comments.  [<u>Id.</u>]  Plaintiff requested intermittent leave from March 2021 to February 2022 in the amount of approximately one absence per month so that he could undergo periodic stress tests and attend other heart-related medical appointments.  [<u>Id.</u>]  Defendant Valk approved this request, as well.  [<u>Id.</u>]  Also in March 2021, Defendant Valk asked Plaintiff to fly from Worcester to a jobsite in northern New England on a private plane.  [<u>Id.</u>]  During the flight -- which was the first time that Plaintiff had flown on a private aircraft for his job at Defendant Liv Group -- Plaintiff began to experience debilitating chest pain.  [<u>Id.</u> at 8].  Once the plane landed (in Nashua, New Hampshire), Plaintiff asked Defendant Valk if he could remain in Nashua and take the rest of the day off because of his medical condition.  [<u>Id.</u>]  Defendant Valk approved this request. [<u>Id.</u>]

The next day, Plaintiff felt better and returned to work -- but he asked Defendant Valk if he could be exempt from having to fly on a private plane again, since they take longer to land during emergencies.  [<u>Id.</u>]  Defendant Valk allegedly shook his head in apparent disapproval and seemed to make light of Plaintiff's condition.  [<u>Id.</u>]

A few months after the plane incident, Plaintiff was walking around a jobsite with Defendant Valk.  [<u>Id.</u> at 9].  While Defendant Valk was leading Plaintiff up ten flights of stairs, Plaintiff needed to stop for a few minutes at the top of each floor given the effects of his cardiac condition.  [<u>Id.</u>]  Defendant Valk allegedly became irritated, threw his drink on the ground and screamed "I ain't got time for this [expletive]!" at Plaintiff.  [<u>Id.</u>]  Plaintiff made clear that these

actions were unwelcome and offensive, but Defendant Valk apparently did not respond in any way to these objections.  [Id.]  Plaintiff avers that throughout this period, he continued to receive no substantive negative feedback at work.  [Id. at 10].

### iv.  **The Company Christmas Party and the Air Travel Dispute**

At Defendant Liv Group's company Christmas party in December 2021, Defendant Valk allegedly introduced Plaintiff to other employees by noting that "[Plaintiff] works up north, but he's got some ailments, so we can't do anything else until he gets better or we find someone else." [Id.]  Plaintiff contends that he had not given Defendant permission to share news of his condition and that none of the employees at the party had any need to know this piece of information.  [Id.] In the beginning of 2022, Plaintiff asked Defendant Valk if he could virtually attend a company meeting in Texas, a request that Defendant Valk approved.  [Id.]

After his doctor advised him that he should engage in air travel sparingly and only by commercial aircraft, Plaintiff asked Defendant Valk if he could fly commercial on a going forward basis during those rare instances that his work required air travel.  [Id. at 11].  Allegedly, Defendant Valk "scoffed" at this request and called Plaintiff a "liability."  [Id.]  Defendant Valk apparently then began to claim that Plaintiff's job duties would require increased private plane travel around the United States.  [Id.]

Plaintiff objected on the basis that, previously, he had only traveled once by private plane in his first three years of employment at Defendant Liv Group and that if he had to travel, he should be allowed to drive or fly commercially.  [Id.]  Defendant Valk allegedly then asserted that commercial air travel would harm the reputation of Defendant Liv Group, and he allegedly refused to guarantee that Plaintiff could fly commercially.  [Id.]

### v.  **The Alleged Mistreatment Intensifies**

Through the beginning and Summer of 2022, Defendant Valk allegedly intensified his mistreatment of Plaintiff, making more frequent demeaning and disability-related comments, such as calling him the "patient." [Id. at 12]. That summer, Plaintiff requested a day off to undergo a bi-monthly medical appointment. [Id.] Defendant Valk approved the request but, soon after, questioned Plaintiff as to whether it was more important to "check [his] blood pressure" or to accomplish a work-related task. [Id.] In August of 2022, Defendant Valk came to inspect Defendant Liv Group's Worcester jobsite. [Id. at 13]. This visit involved the pair ascending five flights of stairs since the company needed to install a fire exit on the roof of the building. [Id.] Defendant Valk allegedly climbed the stairs very quickly and loudly insulted Plaintiff as he trailed behind him, making comments such as: "What're you [expletive] handicapped?" and "I haven't got time for this, you're a [expletive] liability." [Id.]

### vi.  **The Alleged Wage Issues & Plaintiff's Termination**

Plaintiff alleges that, despite performing his work-related tasks as usual, he was allegedly not paid as scheduled for his work during November 2022. [Id. at 13-14]. Plaintiff then attempted to speak to Defendant Valk about not being paid, but this outreach was ignored. [Id. at 14]. Plaintiff continued to perform his job duties throughout December 2022, but he was allegedly not paid for this month, either, and he did not receive his "typical" end of the year bonus. [Id.] Plaintiff also asserts that he was excluded from Defendant Liv Group's company holiday party that year. [Id.]

In January 2023, Defendant Valk notified Plaintiff that his son was going to drop off Plaintiff's outstanding paychecks, but these checks allegedly never arrived. [Id.] That same month, Plaintiff was locked out of his Defendant Liv Group company e-mail account and was told not to return to the jobsite. [Id. at 15]. When Plaintiff contacted Defendant Valk about this development,

Defendant Valk allegedly said, "we changed the locks. We're all set with you." [Id.] Plaintiff took this to mean that he had been terminated from Defendant Liv Group. [Id.] In the same exchange, Defendant Valk allegedly stated that although Defendant Liv Group originally had "lengthy plans" for Plaintiff's employment, "[they] didn't know [Plaintiff's] recovery would be that long." [Id.] Defendant Valk also allegedly told Plaintiff that he was "[n]ot the right fit" and that Defendant Liv Group was "looking for someone with less miles on them." [Id.]

Plaintiff was allowed to visit the Worcester jobsite to gather his belongings (while accompanied by a company escort), but Defendant Liv Group allegedly refused to return: (a) Plaintiff's personal laptop, and (b) an expensive plumbing tool that Plaintiff maintains he purchased with personal funds. [Id.] Plaintiff alleges that he was never issued any form of progressive discipline and that he never received any unsatisfactory job reviews that triggered any performance coaching. [Id.] In that connection, Plaintiff alleges that Defendant Liv Group dispenses progressive discipline and remedial performance coaching to younger and non-disabled employees. [Id. at 16]. Finally, Plaintiff alleges that around the time of his termination, Defendant Liv Group sold or entered an agreement to sell the Worcester property for a large profit. [Id.] Plaintiff contends that since the Worcester project was completed "in substance" and under budget when he was terminated, this sale or agreement to sell should have triggered his five percent bonus, discussed *supra*. [Id.] However, Defendant Liv Group never paid him any such bonus. [Id.]

### vii.   Plaintiff Initiates Massachusetts Commission Against Discrimination and Equal Employment Opportunity Proceedings

In November 2023, Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination (the "MCAD") and cross-filed with the Equal Employment

Opportunity Commission (the "EEOC"). [Id.][4] In April 2024, Plaintiff notified the MCAD[5] of his intent to pursue this matter in court. [Id.] In May 2024, the EEOC sent Plaintiff a right to sue letter. [Id.] Plaintiff filed a complaint with the Massachusetts Attorney General's Office's wage and hour division, and in April 2024, the wage and hour division provided him with a letter permitting him to proceed with a lawsuit. [Id.] Plaintiff then filed the instant lawsuit on May 14th, 2024 in Superior Court.

### b. Procedural History

Plaintiff originally filed this action in Massachusetts Superior Court. [ECF No. 1-1]. Defendants removed the case to this Court on diversity grounds. [ECF No. 1].[6] After Defendants moved to dismiss,[7] Plaintiff moved to amend, explaining that he wished "to clarify allegations" and to "correct typographical mistakes in the Original Complaint." [ECF No. 14 at 1]. The undersigned allowed that motion, [ECF No. 16], and Plaintiff filed an Amended Complaint, [ECF No. 17]. Defendants then filed a joint, partial motion to dismiss. [ECF No. 18]. The chart immediately below visually details the way that Defendants moved to dismiss certain of the claims lodged against them. [See ECF No. 18].

---

[4] The Amended Complaint does not specify which persons or entities were subject(s) of the MCAD and EEOC charges.

[5] This is relevant because, as a Justice of the Massachusetts Superior Court has recently explained, "[a]s a predicate to bringing a civil action in the Superior Court alleging a violation of G. L. c. 151B, a claimant must timely file a complaint of unlawful discrimination with the MCAD." McCarthy v. Outfront Media, 2019 Mass. Super. LEXIS 3327, at *13 (Apr. 30, 2019) (citations omitted).

[6] This Court's subject matter jurisdiction is discussed *infra*.

[7] Defendants' original motion to dismiss, [ECF No. 11], was later denied as moot since it targeted the original and no longer operative complaint. [ECF No. 27]. Accord In re: Celexa & Lexapro Mktg. & Sales Practices Litig., 751 F. Supp. 2d 277, 286 (D. Mass. 2010) ("Because [plaintiff] amended his complaint, his original complaint is no longer operative and the motion to dismiss will be denied as moot.")

| Count # | Cause of Action[8] | Defendant(s) | MTD Challenge? |
|---|---|---|---|
| I | Retaliation for Exercising Rights Under the Massachusetts Paid Family and Medical Leave Act [under] Mass. Gen. Laws ch. 175M | Liv Group, Inc. | No |
| II | Handicap[9] Discrimination and Failure to Accommodate under Mass. Gen. Laws ch. 151B | Liv Group., Inc and Shawn Valk | Yes, as to Valk |
| III | Age Discrimination in Violation of Mass. Gen. Laws ch. 151B | Liv Group., Inc and Shawn Valk | Yes, as to both Defendants |
| IV | Retaliation for Engaging in Protected Activity in Violation of Mass. Gen. Laws ch. 151B | Liv Group., Inc and Shawn Valk | Yes, as to both Defendants |
| V | Failure to Pay Wages in Violation of Mass. Gen. Laws ch. 149 §148) | Liv Group., Inc and Shawn Valk | No |
| VI | Breach of Contract | Liv Group, Inc. | Yes |

### c. This Court's Jurisdiction

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, 568 U.S. 251, 256 (2013) (citation omitted). Subject matter jurisdiction "is never presumed," Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (citation omitted), and "must be apparent from the face of the plaintiffs' pleading . . . ." Viqueira v. First Bank, 140 F.3d 12, 18 (1st Cir. 1998). The Court "must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case." Donahue

---

[8] These are the labels that Plaintiff has used to describe his causes of action. As discussed *infra*, the Court always looks beyond the label of a cause of action to determine its true nature. See, e.g., Brooks v. District of Columbia, 375 F. Supp. 3d 41, 45 (D.D.C. 2019) ("[T]he Court looks through the form of the complaint to the substance of the allegations to determine the true nature of Plaintiffs' claims.").

[9] The Court will use the preferred terms "disabled" or "disability" except when referring to alleged statements or statutory language. The Court assigns identical meanings to these terms. Cf. Budnick v. Town of Carefree, 518 F.3d 1109, 1113 n.5 (9th Cir. 2008) ("Though the [federal statutes at issue] use the term 'handicap,' we use the preferred term, 'disabled,' except when referring to statutory language. We assign identical meanings to these terms.") (internal citations omitted).

v. Boston, 304 F.3d 110, 117 (1st Cir. 2002).  Moreover, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (citation omitted).

Defendants contend that this Court has subject matter jurisdiction under 28 U.S.C. § 1332, which grants federal district courts jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000 (i.e., diversity jurisdiction).  See 28 U.S.C. § 1332(a); [ECF No. 1-2].  Plaintiff has not disputed that there is complete diversity, nor does he dispute that the amount in controversy requirement is met.  However, "[f]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.'"  Industria Lechera De P.R. v. Beiró, 989 F.3d 116, 120 (1st Cir. 2021) (citations omitted).

Here, the Amended Complaint states that Plaintiff is a resident of New Hampshire. [Am. Compl. at 1].  Defendant Liv Group is a Texas corporation and has its principal place of business in Texas. [Id.]  Defendant Valk is a Texas resident.  [Id.]  After review, Court is satisfied that the diversity of citizenship requirement is met.  See 28 U.S.C. § 1332(a)(1).

In terms of the amount in controversy, Plaintiff is seeking, among other damages: (a) a five percent bonus on a $7,000,000 project (i.e., $350,000), [ECF No. 1 at 2]; (b) lost compensation that is allegedly equal to at least $350,000, [id.]; (c) allegedly unpaid wages for two months at a monthly rate of $12,000 (i.e., $24,000), [id. at 3]; and (d) argues that he is entitled to automatic double/treble damages and attorneys' fees on at least certain damages, [see Am. Compl. at 26], which is a factor that the Court may consider for amount in controversy purposes.[10]  After review,

---

[10] See, e.g., Toro v. CSX Intermodal Terminals, Inc., 199 F. Supp. 3d 320, 324 (D. Mass. 2016) ("Defendants could ascertain from Toro's Superior Court complaint that his claims, once trebled, were potentially worth more than $75,000.")

the Court is satisfied that Defendants have met their burden by a reasonable probability that the amount in controversy requirement is met.  Lee v. Conagra Brands, Inc., 958 F.3d 70, 75 (1st Cir. 2020) ("Conagra is the removing party, so it 'bears the burden to show with a "reasonable probability" that the amount in controversy requirement is satisfied.'") (citation omitted).

Accordingly, the Court is satisfied that it presently has subject matter jurisdiction over this action.  See 28 U.S.C. § 1332(a).  Further, Defendants have not challenged this Court's personal jurisdiction over them.  Venue is proper in this judicial district.  See 28 U.S.C. § 1391. Accordingly, the Court may reach now reach the merits of the case.

III.   **Legal Standard**

   a.   **Motions to Dismiss Under Fed. R. Civ. P. 12(b)6**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  At the pleading stage, a plaintiff need not demonstrate that they are likely to prevail, but "[their] claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'"  García-Catalán v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 678).

When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)).  In determining whether a complaint has cleared the plausibility threshold, courts conduct a two-part, context-specific inquiry.  First, the court must separate "'the complaint's

factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" <u>García-Catalán</u>, 734 F.3d at 103 (quoting <u>Morales-Cruz v. Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012)).   "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>García-Catalán</u>, 734 F.3d at 103 (quoting <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011)). Conducting this inquiry requires a court to draw on its "judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted).

Although the Court's motion to dismiss inquiry is ordinarily limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice, <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 20 (1st Cir. 2003), the Court may consider certain documents the authenticity of which are not disputed by the parties, official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint. <u>Watterson v. Page</u>, 987 F.2d 1, 3-4 (1st Cir. 1993) (collecting cases).

## IV.   <u>APPLICATION</u>

### a.   <u>The Chapter 151B Claims (Counts II, III, and IV)</u>

Counts II, III, and IV each arise under Chapter 151B.  With Count II, Plaintiff alleges that Defendants each committed disability discrimination.  With Count III, Plaintiff alleges that Defendants each committed age discrimination.  With Count IV, Plaintiff alleges that Defendants each retaliated against him for engaging in protected activity.

Defendant Valk moves to dismiss each of the Chapter 151B counts pending against him, principally on the basis that Plaintiff failed to allege that he is individually liable.  [ECF No. 19 at

10-13]. Further, Defendants jointly move to dismiss Counts III and IV on additional grounds. As to Count III, Defendants principally argue that Plaintiff's alleged failure to plead that he was treated differently than similarly or less qualified younger persons, which would give rise to an inference of age discrimination, is fatal to his claim. [Id. at 13-16]. With respect to Count IV, Defendants argue that Plaintiff did not meet the pleading threshold regarding a causal connection between the alleged protected activity and alleged adverse action. [Id. at 16-20].

The Court will first survey the relevant portions of Chapter 151B's legal landscape before applying this law to fact on a count-by-count, Defendant-by-Defendant basis.

### i. Legal Landscape

### 1. Statutory Definitions

As the First Circuit has explained, Chapter 151B is "considered the state analogue to the Americans with Disabilities Act (ADA) . . . ." Henry v. United Bank, 686 F.3d 50, 59 (1st Cir. 2012).[11] Among other things, the statute makes it unlawful for "[f]or *any employer* . . . to dismiss from employment . . . or otherwise discriminate against, *because of his handicap*, any person alleging to be a qualified handicapped person." Mass. Gen. Laws ch. 151B, § 4(16) (emphasis added). It also makes it unlawful for "an employer in the private sector, *by himself or his agent*, *because of the age of any individual* . . . to discharge from employment such individual . . . unless based upon a bona fide occupational qualification." Id. at § 4(1B) (emphasis added). This

---

[11] Accordingly, Massachusetts courts look to analogous cases arising under the ADA to inform their interpretation of Mass. Gen. Laws ch.151B. Henry v. United Bank, 686 F.3d 50, 60 (1st Cir. 2012).

In that connection, it is important to note that the SJC has entrusted the MCAD -- and not the courts -- with the primary responsibility of determining the scope of Chapter 151B. Harrington v. Lesley Univ., 554 F. Supp. 3d 211, 226 (D. Mass. 2021) (citation omitted). Accordingly, the undersigned will look to certain MCAD decisions as persuasive authority *infra*. See, e.g., Beasley v. Aramark Unif. & Career Apparel, Inc., 430 F. Supp. 2d 8, 14 (D. Mass. 2006) (another Session of this Court using an MCAD decision to guide its Chapter 151B analysis).

latter protection applies to individuals over forty years old.  Id. at § 1(8).  Thirdly, the statute makes it unlawful "[*f]or any person, employer, labor organization or employment agency* to discharge, expel or otherwise discriminate against any person *because he has opposed* any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five,"  Id. at § 4(4), and it also forbids "*any person* to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter." Id. at § 4(4A) (emphasis added).[12]

## 2.  Elements

A Chapter 151B discrimination claim has four elements: (1) membership in a protected class, (2) harm, (3) discriminatory animus, and (4) causation.  Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 50 N.E. 3d 778, 793 (Mass. 2016) (citation omitted).   A Chapter 151B retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) the plaintiff experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.  See, e.g., Rae v. Woburn Pub. Sch., 113 F.4th 86, 100 (1st Cir. 2024) (citations omitted); Pontremoli v. Spaulding Rehab. Hosp., 747 N.E.2d 1261, 1264 (2001) (citations omitted).

## 3.  Direct-Indirect Evidence

---

[12] As the SJC has explained regarding Mass. Gen. Laws ch.151B, § 4(4) and Mass. Gen. Laws ch.151B, § 4(4A), the word "retaliation" does not appear in Chapter 151B and the term is therefore merely "shorthand" for these sorts of statutory provisions.  Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 50 N.E. 3d 778, 800 n.33 (Mass. 2016) (citations omitted).

Plaintiffs may prove a discrimination[13] or a retaliation[14] case with either direct evidence of discriminatory animus or causation, or with "indirect or circumstantial evidence [of these elements]" using the three-part <u>McDonnell Douglas</u>[15] burden-shifting framework.  <u>Verdrager</u>, 50 N.E. 3d at 793 (describing the burden-shifting framework's operation).[16]    Although some Massachusetts courts have acknowledged the imperfect nature of the direct-indirect evidence distinction,[17] the SJC has explained that in this context, direct evidence is:

> evidence that, "if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present in the workplace." Typically, direct evidence consists of statements of discriminatory intent attributable to an employer. Not surprisingly, such evidence is rarely presented.

<u>Chief Justice for Admin. & Mgmt. of the Trial Court v. Mass. Comm'n Against Discrimination</u>, 791 N.E. 2d 316, 320 n.11 (2003) (internal citations omitted).

### 4.  **Avenues for Individual Liability**

Certain Chapter 151B provisions provide for liability against individuals in addition to employers.  <u>Llorens v. LexShares, Inc.</u>,759 F. Supp. 3d 181, 188 (D. Mass. 2024).   As the Massachusetts Superior Court has explained:

> [t]hese subsections prohibit retaliation, [M.] G. L. c. 15IB, § 4(4), coercion, intimidation, threats, or interference with another's right to work free of unlawful

---

[13] <u>Boadi v. Ctr. for Human Dev., Inc.</u>, 239 F. Supp. 333, 349 (D. Mass. 2017) ("A plaintiff may prove a claim of disability discrimination under the ADA and Chapter 151B by either direct or indirect evidence.")

[14] <u>Dantowitz v. Dexter Southfield, Inc.</u>, 2022 U.S. Dist. LEXIS 161927, at *20 (D. Mass. Sep. 8, 2022).

[15]  <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817, 1824-26 (1973).

[16] To be sure, "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage," but "the elements of the prima facie case . . . are part of the background against which a plausibility determination should be made." <u>Rodríguez-Reyes v. Molina-Rodríguez</u>, 711 F.3d 49, 54 (1st Cir. 2013).

[17] <u>See, e.g.</u>, <u>Johansen v. NCR Comten</u>, 568 N.E.2d 611, 614 (1991) ("We shy from the direct-indirect evidence terminology because it is too elusive a guide.")

discrimination and retaliation, [M.] G. L. c. 151B, § 4(4A), and aiding and abetting another in violation of [M.] G. L. c. 151B, [M.] G. L. c. 151B, § 4(5).

McCarthy v. Outfront Media, 2019 Mass. Super. LEXIS 3327, at *17 (Apr. 30, 2019).[18]

In a published decision, the MCAD has explained that liability under Chapter 151B, § 4(4A) (i.e., for discrimination) may lie against individual defendants in three circumstances:

> 1. Where the individuals are alleged perpetrators of unlawful harassment (sexual and otherwise), they may be named as individual respondents, without regard to whether they are supervisors or co-workers. Such individuals may be charged with "*interfering with one's exercise or enjoyment of the right to a non-discriminatory, harassment free, workplace.*"

> 2. Where there is direct evidence of discrimination and the alleged perpetrator of discrimination was in a supervisory position in which he or she had direct control over complainant's employment, the individual may be named as acting in deliberate disregard of complainant's rights.

> 3. Where there is only circumstantial evidence of discrimination, employees may be named if:

>> a. They had the authority or the duty to act on behalf of the employer;
>> b. Their action or failure to act implicated rights under the statute; and
>> c. There is evidence articulated by the complainant that the action or failure to act was in deliberate disregard of the complainant's rights allowing the inference to be drawn that there was intent to discriminate or interfere with complainant's exercise of rights.

Woodason v. Town of Norton School Comm. et al., 25 MDLR 62, 64 (2003) (emphasis in original).

The elements of a claim under Mass. Gen. Laws ch.151B, § 4(4) were listed *supra*. An aiding and abetting claim under Mass. Gen. Laws ch.151B, § 4(5) requires proof "(1) that the defendant committed 'a wholly individual and distinct wrong . . . separate and distinct from the claim in main'; (2) 'that the aider or abetter shared an intent to discriminate not unlike that of the

---

[18] While not implicated here, the Massachusetts Appeals Court has also identified Mass. Gen. Laws ch.151B, § 16(A) as a fourth avenue for individual liability under Chapter 151B. See Beaupre v. Cliff Smith & Associates, 739 N.E.2d 753, 764 n. 16 (2000). Mass. Gen. Laws ch.151B, § 4(16A) prohibits "an employer, personally or through its agents, to sexually harass any employee."

alleged principal offender'; and (3) that 'the aider or abetter knew of his or her supporting role in

an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her under [Chapter]

151B.'" <u>Llorens</u>, 759 F. Supp. 3d at 189 (citations omitted) (alterations in original).

### i. **Application -- Count II: Disability Discrimination and Failure to Accommodate under Mass. Gen. Laws ch. 151B**

With Count II as to Defendant Valk, Plaintiff contends that the following alleged actions

violated Mass. Gen. Laws ch.151B:

(1) denying one or more of Plaintiff's reasonable accommodation requests (including the request to fly commercial and requests for breaks while climbing stairs) [Am. Compl. at 20], and

(2) subjecting Plaintiff to adverse conditions including a hostile and harassing work environment, failure to pay wages, and wrongful termination of his employment. [Id.]

As Defendant Valk points out, Plaintiff's Amended Complaint did not specify under which

sub-section of Chapter 151B his Count II claims arises. [ECF No. 19 at 10-11]. After careful

review, the Court construes Plaintiff's Count II claim to arise principally under Mass. Gen. Laws

ch. 151B, § 4(4A). <u>See</u> Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice");

Mass. Gen. Laws ch.151B, § 4(4A); [Am. Compl. at 18-20]. That said, the Court will not engage

in analyses of Defendant Valk's possible individual liability *under other* Chapter 151B sub-

sections. <u>Accord</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely

to mention a possible argument in the most skeletal way, leaving the court to do counsel's work .

. . 'Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell

out its arguments squarely and distinctly,' or else forever hold its peace.'") (citation omitted).

Defendant Valk's Mass. Gen. Laws ch.151B, § 4(4A)-related arguments, [ECF No. 19 at

11-12], flow from the premise that there is no direct evidence of disability discrimination such that

the first two of the three theories of liability articulated by the MCAD in <u>Woodason</u>, 25 MDLR at

64 (quoted *supra*), are foreclosed to Plaintiff.  Said differently, Defendant Volk's argument is that since Plaintiff is prosecuting his disability discrimination case with only indirect evidence, only the third Mass. Gen. Laws ch.151B, § 4(4A) liability theory articulated in <u>Woodason</u> would be available to him.  <u>Id.</u>

This argument is unavailing.  The Amended Complaint contains multiple examples of *direct evidence* regarding Defendant Valk's alleged disability discrimination.  <u>See</u> <u>Chief Justice for Admin. & Mgmt. of the Trial Court</u>, 791 N.E.2d 316, 320 (2003).  Here, Plaintiff has plausibly alleged multiple statements that *Defendant Valk* himself made that constitute, at least, a highly probable inference of disability discrimination.  A non-exhaustive list of examples include:

- Defendant Valk allegedly referring to Plaintiff on more than one occasion as "the patient." [Am. Compl. at 7, 12];

- Defendant Valk allegedly telling coworkers at a Christmas party that "[Plaintiff] works up north, but he's got some ailments, so we can't do anything else until he gets better or we find someone else." [<u>Id.</u> at 10], and

- Defendant Valk asking Plaintiff if it was more important to "check [his] blood pressure" or to accomplish a work-related task. [<u>Id.</u> at 12].

These and other statements fit squarely within the SJC's definition of direct evidence, <u>see</u> <u>Chief Justice for Admin. & Mgmt. of the Trial Court</u>, 791 N.E.2d at 320, and thus create the possibility for Defendant Valk to be held individually liable under *either* of the first two Mass. Gen. Laws ch.151B, § 4(4A) liability theories articulated in <u>Woodason</u>, 25 MDLR at 64 (quoted *supra*).  The Court will begin by analyzing whether Plaintiff has plausibly alleged individual liability under the first <u>Woodason</u> liability theory, which provides:

1. Where the individuals are alleged perpetrators of unlawful harassment (sexual and otherwise), they may be named as individual respondents, without regard to whether they are supervisors or co-workers. Such individuals may be charged with "*interfering with one's exercise or enjoyment of the right to a non-discriminatory, harassment free, workplace.*"

Woodason, 25 MDLR at 64 (emphasis in original).

Plaintiff has certainly met the pleading standard for individual liability under this Woodason theory.    Indeed, Defendant Valk is an "alleged perpetrator" of the disability discrimination, as the direct evidence statements quoted *supra* reveal.    Accordingly, Plaintiff has plausibly stated a disability discrimination claim against Defendant Valk under this Woodason theory.  See id.

The second Woodason theory provides:

2.  Where there is direct evidence of discrimination and the alleged perpetrator of discrimination was in a supervisory position in which he or she had direct control over complainant's employment, the individual may be named as acting in deliberate disregard of complainant's rights.

Id.

As discussed *supra*, there is direct evidence of Defendant Valk's alleged disability discrimination.  It is also clear under the motion to dismiss standard that Defendant Valk -- the alleged perpetrator of that discrimination -- was in a supervisory position in which he had direct control over Plaintiff's employment.  The Court will not belabor this obvious point, but two illustrative examples from the Amended Complaint make this plain.  Plaintiff alleged that "[a]t all relevant times, [Plaintiff] *reported to* [Defendant Valk], who owns [Defendant Liv Group] with his father, Ronald Valk []."  [Am. Compl. at 4 (emphasis added)].  Moreover, it is clear from the near-final conversation between Plaintiff and Defendant Valk that the latter had direct control over Plaintiff's employment.  [See id. at 15 (Defendant Valk explaining to Plaintiff that Defendant Liv Group originally had "lengthy plans" for Plaintiff's employment)].  Accordingly, Plaintiff has plausibly stated a disability discrimination claim against Defendant Valk under the second Woodason theory, as well.  See 25 MDLR at 64.

For the foregoing reasons, Defendant Valk's motion to dismiss Count II is

**<u>DENIED</u>**.

### ii.  <u>Application -- Count III: Age Discrimination Mass. Gen. Laws ch.151B</u>

With Count III as to both Defendants, Plaintiff contends that the following alleged actions

constituted age discrimination under Mass. Gen. Laws ch.151B:

- Subjecting Plaintiff to adverse actions, "including, but not limited to, a harassing and hostile work environment, the failure to pay wages and/or commissions, and the termination of Mr. Thomas's employment, because Mr. Thomas was over 40 years old, and/or because of Mr. Thomas's age, and/or because Mr. Thomas was an older, disabled man…" [Am. Compl. at 21];

As discussed *supra*, Plaintiff's Amended Complaint did not specify under which sub-

section of Chapter 151B his Counts III claims arises. [ECF No. 19 at 10-11]. However, the Court

construes Plaintiff's Count III claim to arise principally under Mass. Gen. Laws ch.151B, § 4(1B).

<u>See</u> Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); Mass. Gen. Laws

ch.151B, § 4(1B); [Am. Compl. at 20-22].

As discussed *supra*, a Chapter 151B discrimination claim has four elements: (1)

membership in a protected class, (2) harm, (3) discriminatory animus, and (4) causation.

<u>Verdrager</u>, 50 N.E. 3d at 793 (citation omitted).  In the age-discrimination context and assuming a

lack of direct evidence, the *prima facie* elements are that: (1) plaintiff was over forty years of age,

(2) they performed their job at an acceptable level, (3) they were terminated, and that they were

replaced by a similarly or less qualified younger person.  <u>See, e.g.</u>, <u>Sassine v. Fid. Mgmt. &</u>

<u>Research Co.</u>, No. SUCV2012-04085-E, 2013 Mass. Super. LEXIS 201, at *6 (Mass. Super. Ct.

Oct. 22, 2013).

Here, it is undisputed that Plaintiff is over forty years old, Mass. Gen. Laws ch.151B, §

1(8); [Am. Compl. at 21], but the Amended Complaint does not tell the Court exactly how old he

is -- a fact that, while not fatal, is an early deficiency.  Moreover, the alleged facts relating to age discrimination are strikingly thin as compared to the allegations relating to disability discrimination.  The Court will begin by first examining the alleged statements attributable to Defendant Valk, of which there are two.

First, Plaintiff alleges that Defendant Valk told him that that Defendant Liv Group was "looking for someone with *less miles* on them."  [Am. Compl. at 15 (emphasis added)].  The Court finds that this alleged remark does not plausibly suggest that Defendant Valk was discriminating because of Plaintiff's age because, when viewed in its proper context, the statement much more likely related to Plaintiff's medical challenges.  More specifically, Plaintiff's allegation is that in the same breath, Defendant Valk said that Defendant Liv Group had "*lengthy plans*" involving Mr. Thomas's employment, "but [they] didn't know [Mr. Thomas's] *recovery* would be that long." [Id.]  It does not follow logically that Defendant Liv Group had *lengthy plans* for Plaintiff if they also thought he was too old.  Moreover, the fact that Defendant Valk allegedly referenced Plaintiff's recovery in the same exchange where he used the term "less miles" further signals that this statement, standing on its own, does not give rise to a reasonable inference of age-related discriminatory animus.

The second alleged age-related statement attributable to Defendant Valk occurred during a Worcester jobsite visit from Defendant Valk in August 2022.  There, Defendant Valk allegedly "proceeded up the [jobsite's] stairs at a quick pace and consistently issued derogatory and offensive remarks…including remarks about [Plaintiff's] *age* and handicaps." [Id. at 13 (emphasis added)].  This threadbare allegation does not clear the pleading threshold because it is too vague and conclusory to plausibly suggest that Defendant Valk was discriminating on the basis of Plaintiff's age.  See, e.g., Spatafore v. Analogic Corp., No. 1777CV00733, 2018 Mass. Super.

LEXIS 3272, at *21-22 (Mass. Super. Ct. Aug. 27, 2018) ("The Amended Complaint's allegations of age discrimination are too barebones to 'plausibly suggest' that Analogic was motivated by age discrimination.")

Plaintiff's age-discrimination claim against Defendant Liv Group must be dismissed, as well. The only relevant allegation there is Plaintiff's bald assertion that Defendant Liv Group "issues both progressive discipline and performance coaching in the cases of younger and/or non-disabled employees." [Am. Compl. at 16]. Even if this statement was true, Plaintiff still failed to plausibly allege that he was denied any particular resources as a result of his age, which is a necessary step in clearing the pleading threshold. See, e.g., Hayes v. BNY Mellon, 621 F. Supp. 3d 162, 167 (D. Mass. 2022) ("Nor has Plaintiff alleged a plausible claim that he was denied resources as a result of his age—his conclusory sentence in his complaint is insufficient.") Moreover, Plaintiff did not plausibly allege that Defendant Liv Group replaced him with a similarly or less qualified younger person, another factor weighing in favor of dismissal. See, e.g., Alicea v. N. Am. Cent. Sch. Bus, LLC, 232 F. Supp. 3d 213, 216 (D. Mass. 2017) ("The mere fact that a . . . older employee was terminated does not trigger a right to conduct discovery, in hopes that evidence of a discriminatory motive may turn up.")

Accordingly, Count III is **DISMISSED** as to both Defendant Valk and Defendant Liv Group.

### i. Application -- Count IV: Retaliation for Engaging in Protected Activity in Violation of Mass. Gen. Laws ch. 151B

With Count IV, Plaintiff alleges that both Defendants retaliated against him for engaging in at least the following allegedly protected activities:

- requesting and utilizing reasonable accommodations for his handicap which were intended to allow [Plaintiff] to perform the essential functions of his job,

- opposing, and raising protected concerns about, harassment and discrimination motivated by his handicap, and by

- opposing, and raising protected concerns about, [Defendant Liv Group's] failure to engage in an interactive dialogue related to his handicap (including, but not limited to, raising concerns [Defendant Liv Group's] seemed to be attempting to force Mr. Thomas to take an extended, unpaid leave).

[Am. Compl. at 22].

A Chapter 151B retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) the plaintiff experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action. See, e.g., Rae, 113 F.4th at 100.

Plaintiff Count's IV claim clears the pleading threshold as to each of the Defendants. First, Plaintiff has sufficiently alleged that he was engaging in protected activity with his various requests for accommodation. Second, he has sufficiently alleged that he suffered adverse employment actions, including but not necessarily limited to his termination. Third, he has sufficiently pled that there was a causal connection between his protected activity and the termination, for example, especially considering the alleged pattern of derogatory and demeaning comments that preceded it. Therefore, Plaintiff's Count IV claim survives dismissal at this stage.

### b.  Count VI: Breach of Contract

With Count VI, Plaintiff contends that Defendant Liv Group breached an oral contract under which it promised to pay Plaintiff a bonus equivalent worth five percent of a $7,000,000 project budget if Plaintiff was able to lead the project to completion under budget. [Am. Compl. at 25]. Plaintiff alleges that the project in question was completed "in substance" and under budget[19] but that he was nevertheless never paid any portion of the bonus. [Id. at 16].

---

[19] Plaintiff did not elaborate further on the extent of alleged completion in the Amended Complaint.

### i. **Legal Landscape**

To prove a breach of contract claim under Massachusetts law, a plaintiff must demonstrate (1) that an enforceable contract existed, (2) the defendant breached that contract, and that (3) the plaintiff suffered damages.  See, e.g., Beaupre v. Seacoast Sales, Inc., 507 F. Supp. 3d 353, 361 (D. Mass. 2020) (citation omitted).  Under Massachusetts law, an oral contract is enforceable in court unless the statute of frauds requires such a contract to be in writing.  See. e.g., Moog, Inc. v. ClearMotion, Inc., 2020 U.S. Dist. LEXIS 194913, at *13 (D. Mass. Oct. 21, 2020) (citation omitted); Zwidra v. Mazurek, 26 Mass. L. Rep. 222 (2009).[20]  Importantly, the "First Circuit has encouraged courts to allow breach of contract claims to survive motions to dismiss if the contract could plausibly be read in the plaintiff's favor and the complaint's allegations suggest a breach." Sourcing Unlimited, Inc. v. Elektroteks, LLC, No. 20-cv-11955-ADB, 2021 U.S. Dist. LEXIS 127531, at *37 (D. Mass. July 8, 2021) (citing Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 233 (1st Cir. 2013)).

### ii. **Application**

Here, Defendant Liv Group does not argue that there was not a valid contract, just that Plaintiff failed to plausibly allege that it breached any obligations under it.  [See ECF No. 19 at 20-21].  Defendant Liv Group argues that Plaintiff "[did] not assert that he led the project to completion under budget," [id.], and that he also did not "assert that he would have led the project to completion under budget if he had not been terminated," [id. at 21].  Finally, Defendant Liv Group points out that Plaintiff did not allege full completion of the project (i.e., only that it was done "in substance") or that he *knew* it had been completed under budget.  [Id.]

---

[20] Defendant Liv Group did not raise a statute of frauds defense and therefore any such argument is deemed waived for purposes of this motion.  Accord Kudlicki v. MDMA, Inc., 2006 U.S. Dist. LEXIS 27971, at *4 n.1 (N.D. Ill. May 10, 2006) ("[Defendant] makes a cursory argument in a footnote concerning the Statute of Frauds. Because [defendant] has not developed this argument, it has waived its Statute of Frauds defense for purposes of this Motion to Dismiss.")

After careful review, the Court finds that Plaintiff has plausibly alleged a breach of contract claim.  First, Defendant Liv Group has not challenged Plaintiff's contention that an enforceable oral contract existed.  Second, Plaintiff's allegation that, "at the time of [his] termination, the project *had been completed in substance and under the budget* of $7,000,000" is enough to clear the threshold at the motion to dismiss stage. [Am. Compl. at 16 (emphasis added)]; Cf. <u>Sampson v. Eaton Corp.</u>, 809 F.2d 156, 159 n.2 (1st Cir. 1987) (stating in the context of a breach of contract case involving an oral agreement that, "[w]hether plaintiff adequately performed we find to have been at least a jury question").  Lastly, Plaintiff has plausibly alleged suffering damages.  [<u>See, e.g.</u>, Am. Compl. at 25 ("[Plaintiff] has never been paid any portion of the bonus relating to the building being completed under budget . . . .") ]. At this stage of the proceedings, the Court must accept these factual allegations as true.  Accordingly, Defendant Liv Group's motion to dismiss Count VI is **<u>DENIED</u>**.

## V.    <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss [ECF No. 18] is **<u>DENIED IN PART</u>** and **<u>GRANTED IN PART</u>**.

**SO ORDERED.**

Dated: July 14, 2025

    /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge